### LEVI v. MATHEWS.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1906.)

#### No. 644.

1. ACTION—EQUITABLE DEFENSE IN ACTION AT LAW—RULE OF FEDERAL COURTS.
    In an action at law in a federal court to recover money due on a contract, an allegation of fraud in procuring the contract, made in the answer, states an equitable defense, which the court is without jurisdiction to entertain, nor can such jurisdiction be acquired by waiver or consent of parties.

2. VENDOR AND PURCHASER—TITLE OF VENDOR—FAILURE TO RECORD DEEDS.
    Under the statutes of North Carolina, title to realty passes by the delivery of a sufficient deed, and the failure to record such deed does not render the grantee's title unmerchantable nor affect its validity, except as against subsequent purchasers from or creditors of the grantor.
    [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, §§ 246–248.]

3. WRIT OF ERROR—REVIEW—INSTRUCTIONS.
    An assignment of error with respect to the charge of the trial court will not be considered by the appellate court unless the objection made was covered by an exception duly taken at the trial.

4. ADVERSE POSSESSION—TITLE ACQUIRED—EFFECT OF ACCEPTANCE OF DEED.
    A title to land acquired by adverse possession is not vitiated by the subsequent acceptance by the person so in possession of a deed thereto from a third person, nor is he estopped by such acceptance to deny that the title was in such third person, but he may rely upon either or both sources of title.
    [Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 262, 263.]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Charlotte.

John A. McRae (C. D. Bennett, on the brief), for plaintiff in error.
Charles W. Tillett (Frank I. Osborne and S. Gallert, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and PURNELL, District Judge.

PURNELL, District Judge. Julius Mathews, the defendant in error, plaintiff below, instituted an action at law against Meyer Levi, the plaintiff in error, in the Circuit Court of the United States for the Western District of North Carolina, at Charlotte, on the 20th of May, 1901, for the recovery of the purchase money for land sold by Julius

Mathews, defendant in error, to Meyer Levi, plaintiff in error, under a contract. On March 18, 1901, Julius Mathews, the defendant in error, tendered to the plaintiff in error here a deed for the greater part of the lands contracted to be conveyed. Plaintiff in error refused to accept deed and pay the purchase money for the reasons stated in his answer. The answer admitted all the allegations of the complaint, except as set forth in paragraphs 4, 5, 7, and 8 thereof, as follows:

"(4) The defendant admits that the plaintiff, by his attorney, tendered him a deed about the date mentioned, purporting to convey the lands therein described; but defendant avers and alleges that he is informed and believes that plaintiff's title to said lands is imperfect and invalid, and therefore denies that plaintiff tendered him a perfect deed to said lands, or to any part or parcel thereof. Defendant, on information and belief, denies that plaintiff complied with his contract by tendering a good and lawful deed to said lands, and avers that he was not bound in law to accept the imperfect and invalid deed offered by the plaintiff.

"(5) Defendant admits that part of paragraph five of the complaint which refers to the number of acres contracted for and the purchase is correctly stated. Defendant also admits that demand was made for the purchase money and notes for deferred payments at the time the aforesaid purported deed was tendered, but denies that he wrongfully failed and refused to pay over the purchase money and make and execute notes and deed of trust. The reasons for defendant's refusal to pay the purchase money and execute deed of trust and notes will more fully appear in his further answer below."

"(7) Paragraph seven of the complaint is denied. Plaintiff is unable to perform his contract.

"(8) Paragraph eight of the complaint is denied."

Paragraphs denied are:

"(7) That plaintiff is now and has been at all times ready, able, and willing to comply in all respects with the said contract with the defendant, and hereby offers to execute title to the defendant in accordance with the terms of the said contract whenever the defendant complies with his part of said contract.

"(8) That plaintiff is informed and believes that the defendant had unjustly repudiated his said contract, and has refused to comply with the same or any part thereof; that by reason of the failure and refusal of the defendant, as aforesaid, and by reason of the other facts hereinbefore set forth, the plaintiff has been damaged in the sum of $3,186.25, with interest thereon from the 18th day of March, 1901, and the plaintiff is entitled to recover of the said defendant said purchase money which defendant contracted to pay the plaintiff, to wit, the sum of $3,186.25, with interest thereon from the 18th day of March, 1901."

The "further defense," referred to in the fifth paragraph of the answer, was admittedly an equitable defense, setting up fraud and deception on the part of the defendant in error in obtaining the contract of purchase. This counsel contends may be done, and cites state decisions as authority. To that part of the answer setting up an equitable defense defendant in error filed a replication denying the allegations of fact, and this answer counsel contends gave jurisdiction. On the trial the "further answer" of plaintiff in error setting up the equitable defense was stricken out by the court after the pleadings were read, and the court refused to entertain or submit issues raised by the said "further defense" and replication thereto. This action on the part of the court is the basis of the first two exceptions and assignments of error. This action was cognizable in a court of law. It was for the recovery of an amount claimed to be due on a contract. Of this a court of law alone had jurisdiction.

There was no error in striking out the "further defense," the same being cognizable in equity. That court is by statute always open, and defendant below was not without remedy therein when properly sought. Equity has always jurisdiction of fraud, misrepresentation, and concealment, and this does not depend on discovery. Where an agreement against which a complainant asks relief is perpetual in its nature, and the keeping of it on foot is a fraud against the party complaining, so that the only effectual relief against it is to have it annulled, the case is one for equity, not for law. Jones v. Bolles, 9 Wall. 364, 19 L. Ed. 734; Craig v. Leitensdorfer, 123 U. S. 210, 8 Sup. Ct. 85, 31 L. Ed. 114; Tyler v. Savage, 143 U. S. 95, 12 Sup. Ct. 340, 36 L. Ed. 82; Buzard v. Houston, 119 U. S. 352, 7 Sup. Ct. 249, 30 L. Ed. 451. The only fraud permissible to be proved in law is fraud touching the execution of the instrument. George v. Tate, 102 U. S. 564, 26 L. Ed. 232. This action was instituted at law for the purpose of recovering money due on contract. A court of law alone had jurisdiction. Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; Loud v. Land Co., 153 U. S. 564, 14 Sup. Ct. 928, 38 L. Ed. 822. The distinction between legal and equitable defenses, whatever may be the rule in other jurisdictions, in the courts of the United States are always recognized and jealously guarded. They cannot be mixed. Equitable suits must be on the equity side of the docket, and actions at law on the law side. No principle is better settled in these courts. Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991. Nor can this distinction or jurisdiction be waived by consent of parties, but can and should be enforced by the court of its own motion. It is statutory. Thompson v. R. R., 73 U. S. 134, 18 L. Ed. 765; Lewis v. Cocks, 90 U. S. 466, 23 L. Ed. 70; Oelrichs v. Spain, 82 U. S. 211, 21 L. Ed. 43; Lindsay v. Bank, 156 U. S. 485, 15 Sup. Ct. 472, 39 L. Ed. 505. The claim of defendant below, plaintiff in error here, therefore, that the filing of the replication traversing the allegations of the complaint gave the court jurisdiction, and made it the duty of the trial judge to submit the issues thus raised and tendered, is without force. Consent cannot confer jurisdiction. The court of law was without jurisdiction of an equitable defense, and nothing the parties could do could endow it with jurisdiction. This is fundamental as to United States courts. Whatever the practice may be in state courts, in many of which the Code practice obtains, the distinction between actions at law and suits in equity, together with legal and equitable defenses, being abolished, the same court administering both law and equity, such practice does not obtain in the courts of the United States. Exceptions 1 and 2 are therefore overruled.

The equitable defense set up being thus eliminated, the execution of the contract and its breach admitted, the question then reverted to the issues as to the title of defendant in error as raised by the fourth, fifth, seventh, and eighth allegations of the answer, before recited. If plaintiff below, defendant in error here, was vested with a good legal title, and tendered a good and sufficient deed, was able and did perform his part of the contract, the breach being admitted, then he was entitled to recover at law.

The third exception is thus stated and allowed:

"(3) The court erred in the general charge severally in the following instances in using the words: 'Therefore, gentlemen, as to the first tract of four acres, the court charges you to find upon this evidence, which is incontrovertible, that the plaintiff tendered the defendant a sufficient deed under this contract.'"

In his assignment of errors on this exception, plaintiff in error says the grounds of this error is as follows:

"The deed conveying this land from Ervin to Smith, which was one of the mesne conveyances and links in the title introduced by defendant in error, was not registered until 1904, and the deed from Smith to defendant in error conveying this same land was not recorded until the 22d day of March, 1901, and that this was subsequent to the tender of title to plaintiff in error by defendant in error."

The court had previously charged the jury as to this link in the chain of title that if the deeds referred to were executed and delivered at the time they purported to have been executed the title vested in the grantee. There seems to be no foundation in law for this exception. Title passes by the execution and delivery of the deed. There are statutes regarding the registration of deeds in North Carolina, but the provisions of those statutes do not seem to apply. There had been no other deeds by the grantors, and it was sufficient to perfect title by the registration of this deed at any time. Hobson v. Buchanan, 96 N. C. 444, 2 S. E. 180, and cases cited. The failure to register a deed under the laws of the state does not void it except as to subsequent purchasers and creditors. Laws N. C. 1885, p. 233, c. 147; Utley v. Railroad Co., 119 N. C. 720, 25 S. E. 1021. As to these, deeds are put on the same plane with mortgages.

The fourth exception as stated and allowed is that:

"The court erred in its general charge to the jury by using the following language in reference to the second tract: 'I charge you that if from the evidence you are satisfied that this interlineation—this addition—was in that deed at the time of its execution by Ervin and his wife, and was there at the time he recorded it upon the books in Rutherford county, that although it is in a different handwriting from the body of the deed, yet that in law would make it a sufficient and perfect deed; and in passing upon that question, gentlemen, you may consider the fact that the maker of the deed was himself the register who made the entry upon the book; and the court charges you further, gentlemen, that the fact that the deed is presented here as having been executed under the forms of law with that interlineation upon its face, and it appearing further that that interlineation is upon the record book of Rutherford county, the law presumes it is properly there, and it will be your duty to find that it is properly there and a part of the deed, unless there is evidence outweighing that presumption which would rebut it, and the court charges you such evidence has not been produced in this trial. Therefore, the court charges you.. as a matter of law, to find that that presumption is still existing unrebutted, and that the deed with the interlineation was entered upon the record of Rutherford county at the date evidenced by the certificate.'"

This is the statement of plaintiff's assignment upon the grounds and evidence as follows:

"The question of this interlineation and the identity and the sufficiency of the description of the land in this deed is a question for the jury, and not entirely a question of law for the court."

The record does not disclose any evidence introduced by plaintiff in error to show the interlineation was not in this deed at the time it was

executed, nor was any such issue raised by the pleadings, but the evidence did tend to show such interlineation was in the deed at the time it was probated and recorded.

Counsel argues other questions, but those questions do not properly arise on the exception. There is no merit either in the exception or the assignment of error as presented by the record. It is the exception as taken under the rules and allowed by the trial judge which this court considers, not the assignment of counsel, not based on any exception so taken and allowed.

Counsel argue the question of identity and sufficiency of description, but there is no reference to either in the exception. This is not an uncommon error where there is a different method of taking an appeal. Where a case on appeal is frequently made up by consent of counsel, sometimes presenting to the appellate court a case which is novel to the trial judge, or a statement of a case on appeal is made by the court which is equally novel to counsel. Here the rules are fixed, and must be complied with. Rule 11 (90 Fed. cxlvi, 31 C. C. A. cxlvi): "Error not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned." The only error assigned in the exception and allowed by the court was as to the interlineation, and as to this there was no error.

The fifth exception was abandoned in this court, not pressed.

6. The court erred in using the following words in the general charge:

"Now, gentlemen, the last tract about which there is contention is tract No. 8. The defendant says that plaintiff's title to that tract is not good for the reason that plaintiff in the course of his testimony offered a certified copy of a paper purporting to be a deed made by a firm in Rutherfordton known as Simpson, Miller & Co., in the year 1877, to Frank Walton, anterior to the deed. The plaintiff also introduced as a link in his chain of title a deed from Morris to Robert Simpson, James A. Miller, and C. E. Guthrie, who are shown to have composed the firm of Simpson, Miller & Co. The paper purporting to be a deed from Simpson, Miller & Co. is signed in the firm name with a seal, and therefore defendant says that it is not a deed, and for this reason he insists that there was no conveyance of the title to Simpson, Miller & Co. derived from Morris to Frank Walton. On the other hand, the plaintiff has shown that Walton went into possession of this tract of land in the year 1842, and that he held it, claiming it adversely, until the year 1884, when he executed a deed for it to McIntyre; McIntyre being the source from which the plaintiff derived his title. Another contention here is that, although this evidence may satisfy you that Walton was in this possession from 1842 to 1884, yet his acceptance of this paper from Simpson, Miller & Co. is an admission of ownership on their part, or interest in the land on their part, which would rebut the presumption which arises in law by reason of the uninterrupted continuance of this adverse possession, and upon that, gentlemen of the jury, the court submits this issue: 'Did Frank Walton enter into actual possession of tract No. 8, and did he remain in possession of same, claiming it adversely until 1884, when he conveyed to McIntyre?' Now, there is no dispute as to the testimony of Harris that Walton was in possession in 1842, and that his possession continued until 1884, but, as stated by the court, the defendant insists that by the acceptance of this paper from Simpson, Miller & Co. in 1877, he admitted, although he was in possession, that he was not the sole or exclusive owner. Upon that proposition the court charges you that the continuous adverse possession of Walton from 1842 to 1873, when the Morris deed was made, being more than 30 years, presumes a grant from the state which would perfect the title; that his continuance in the actual possession after that from 1873 to

1884 confirms and strengthens this presumption and title, unless in law the acceptance of this paper from Simpson, Miller & Co. had the effect of weakening or destroying that presumption, and as to that paper the court charges you that it is immaterial, and does not affect the title derived to Walton from this continuous adverse possession, and you will find this issue in the affirmative, and upon it the court will hold the law to be that in 1884, when Frank Walton conveyed to McIntyre by deed, he had a perfect title, which has not been interrupted since; the title of plaintiff being directly traced by a deed and other competent evidence of title to Frank Walton."

In response to the issue submitted, the jury found that Frank Walton had been in adverse possession of the tract of land (No. 8) from 1842 to 1884—42 years. Thirty years' adverse possession or 21 years under colorable title would confer legal title even against the state or one claiming under a grant from the state. Code 1883, §§ 139, 140; Code Civ. Proc. §§ 18, 19; Rev. Code, c. 65, § 2. The argument that the acceptance of the deed from Simpson, Miller & Co. vitiated this title is without merit. Nor is there any merit in the question that this deed could act as an estoppel on Walton to deny the title of Simpson, Miller & Co. The contrary was held by the Supreme Court of North Carolina (and as to rules of property in North Carolina the decisions of that court are conclusive) in a recent case (Smith v. Ingram, 130 N. C. 100, 40 S. E. 984, 61 L. R. A. 878, and Drake v. Howell, 133 N. C. 162, 45 S. E. 539), wherein the court says that an estoppel by deed cannot arise until the instrument which it is claimed creates the estoppel has become effective as a deed. The adverse possession of Walton had ripened into a good title at the time the deed from the Rutherford firm was executed. We are not informed why this deed was accepted. Suppose it was to stop threatened litigation, and to prevent this, at best expensive, Walton bought off the claimant, although his title was good, and he knew he had a good defense to any action claimant might commence, to hold with plaintiff in error would be to say such action on his part was a surrender of the title he had acquired by long years of adverse possession, under colorable title, good against the state. Such is not law, or reason, which is the life of the law. A grantee is not estopped to deny a grantor's title when such grantee also claims title from other sources, to set up an adverse superior title. Robertson v. Pickrell, 109 U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049. If the deed was defective, as argued by counsel for plaintiff in error, then, of course, it could not act as an estoppel. We are putting it in the strongest light for plaintiff in error.

There is no merit in either of the exceptions. The judgment must therefore be affirmed. Affirmed.