### KEATLEY v. UNITED STATES TRUST CO. et al.

#### No. 73.

(Circuit Court of Appeals, Second Circuit. January 10, 1918.)

ACTION ☞23—EQUITABLE RELIEF IN ACTION AT LAW—JUDICIAL CODE.

Judicial Code, § 274b, as added by Act March 3, 1915, c. 90, 38 Stat. 956 (Comp. St. 1916, § 1251b), provides that "in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court"; also that, "in case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication." *Held*, that it was not the intention of Congress by such provisions to abolish all distinctions between actions at common law and suits in equity, and to establish one form of civil action for all cases; that the only case in which a plaintiff can obtain equitable relief in an action at law by replication is where a replication is required, because of a prayer for affirmative relief in the answer or plea; and that where an answer did not pray for such relief, but pleaded a release, which on its face was a complete legal defense to the action, plaintiff could not, by filing a replication, obtain a cancellation of the release, which could only be done by a bill in equity.

Learned Hand, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by Harry Wronkow Keatley against the United States Trust Company and Morgan J. O'Brien, as executors of the will of Herman Wronkow. Judgment for defendants, and plaintiff brings error. Affirmed.

John B. Johnston, of New York City (Vine H. Smith, of New York City, of counsel), for plaintiff in error.

Stewart & Shearer, of New York City, for defendant in error United States Trust Co.

A. B. Boardman, of New York City (Charles B. Fernald, of New York City, and George L. Shearer, of New York City, of counsel), for defendant in error O'Brien.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. This is a suit by Harry Wronkow Keatley against the executors of the last will and testament of Herman Wronkow, deceased, to recover the sum of $10,000, with interest from November 30, 1911. November 30, 1910, Wronkow died, leaving a large estate. April 25, 1894, he executed the following instrument and delivered it to Lydia Keatley, the plaintiff's mother, on or about April 30:

"Whereas, Mrs. Lydia Keatley, the wife of John Keatley, of Marshaltown, Iowa, has been and is a friend to me, and has in many ways befriended me, for which I wish and hereby agree to repay her for such friendship by contributing to the support and education of her son, Harry Keatley, the sum of $500 per annum until the said Harry Keatley reaches the age of 21 years, and pay the same in quarterly payments, namely, on the first day of May, August, November, and February of each year from the first day of May, 1894. I further agree to bequeath to said Harry Keatley and direct my executors to carry out my request to pay out of my estate after my death the sum of $10,000 to the said Harry Keatley in lieu of the stipulated yearly $500 as before said, which I agree to pay to him during my lifetime until the said Harry Keatley reaches the age of 21 years, which payment, however, of $500 yearly shall be discontinued and cease after my death. Should I survive the said Harry Keatley, then this foregoing stipulation shall cease and be null and void."

On the same day Mrs. Keatley executed and delivered to Wronkow the following instrument:

"Received from H. Wronkow the above stipulations and provisions, which I have voluntarily accepted for all claims I had, have, or may have, of all and whatever nature or action, for damages in courts of equity or United States."

This transaction followed Mrs. Keatley's employment of an attorney to enforce certain demands she was making against Wronkow. Wronkow made some or all of the annual payments up to the time of the plaintiff's coming of age, March 31, 1904, but died without making any provision for him in his will.

The executors set up in their answer in bar of the plaintiff's claim the following release:

"To All Whom These Presents shall Come or may Concern—Greeting: Know ye, that I, H. W. Keatley, of Washington, D. C., for and in consideration of the sum of six hundred ($600) dollars lawful money of the United States of America to me in hand paid by Herman Wronkow, the receipt whereof is hereby acknowledged, have remised, released, and forever discharged, and by these presents do for myself, my heirs, executors, and administrators, remise, release, and forever discharge the said Herman Wronkow, his heirs, executors, and administrators, of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law or in equity, which against him I have ever had, now have, or which against his heirs, executors, or administrators hereafter can, shall, or may have, for, upon, or by reason

of any matter, cause, or thing whatsoever from the beginning of the world to the day of the date of these presents.

"In witness whereof, I have hereunto set my hand and seal the 29th day of July in the year one thousand nine hundred and nine."

The plaintiff testified that he had known Wronkow from childhood, and had always been told that he was his guardian. Wronkow was a part of his Christian name, and Wronkow during his childhood gave him toys, took him to the theater, and treated him in a most intimate relation. July 29, 1909, the plaintiff came on from Washington, D. C., saw Wronkow in his office, and signed the release. He testified that when he did so he did not know of the existence of the instrument dated April 25, 1894, and his mother testified that she had never told him of it. The trial judge directed a verdict for the defendants on the ground that the release was a complete bar.

As the plaintiff executed the instrument, knowing that it was a release, it was at best voidable, and not void. Therefore, as the law stood until March 3, 1915, he could only have escaped from it by filing a bill in equity for cancellation, which he had not done. Standard Portland Cement Co. v. Evans, 205 Fed. 1, 125 C. C. A. 1; Hogg v. Maxwell, 218 Fed. 356, 134 C. C. A. 164. The act of March 3, 1915, added section 274b to the Judicial Code in the following words:

• "Sec. 274b. That in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of seeking the relief prayed for in such answer or plea. Equitable relief respecting the subject matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication. Review of the judgment or decree entered in such case shall be regulated by rule of court. Whether such review be sought by writ of error or by appeal the appellate court shall have full power to render such judgment upon the records as law and justice shall require." Comp. St. 1916, § 1251b.

The distinction between legal and equitable procedure has been jealously preserved by the Supreme Court. Bennett v. Butterworth, 10 How. 669, 675, 13 L. Ed. 859; Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059. We think it quite clear that Congress did not intend by the above amendment to the Judicial Code to abolish all distinctions between actions at common law and suits in equity and to establish one form of civil action for all cases. The provisions of the section apply, with one exception, presently to be considered, to defendants only:

"The defendant shall have the same right * * * as if he had filed a bill embodying the defense or seeking the relief prayed for in such answer or plea. Equitable relief * * * may thus be obtained by answer or plea."

Two references to the plaintiff create some uncertainty:

"That in all actions at law equitable defenses may be interposed by answer, plea or replication.· * * * In case affirmative relief is prayed in such answer or plea the plaintiff shall file a replication."

We should construe the word "replication" in the same sense in each case, if possible. The general replication, which is a mere denial intended to put the cause at issue, has been generally abandoned in the Code states and by the Supreme Court in admiralty rule 51 (29 Sup.

Ct. xliv) and the present equity rule 31 (198 Fed. xxvii, 115 C. C. A. xxvii). Full effect is given to the provision that an equitable defense may be interposed by replication, by construing "replication" as a special replication setting up a defense to an answer interposing an equitable defense and asking affirmative relief. Such an answer is what is known at law as a "counterclaim." The answer in the present case sets up a purely legal defense. It is not even a counterclaim. To such a defense the section as we construe it does not permit a replication interposing an equitable defense. The plaintiff should have applied by bill in equity for cancellation of the release.

Therefore we are compelled to affirm the judgment.

LEARNED HAND, District Judge (dissenting). It seems to me that we should not construe so narrowly section 274b. The phrase, "equitable defenses may be interposed by * * * replication without the necessity of filing a bill on the equity side of the court," can only mean, I think, this: That where the defendant interposes a bar valid at law, the plaintiff may set up in his next pleading facts avoiding the bar in equity. The suggestion is that it might give the plaintiff the right to plead to the defendant's "equitable defenses" set up in the answer, but that is independently provided for in the fourth sentence of the act. Besides, the defendant's answer to a suit in equity cannot properly be said to be interposed by "filing a bill on the equity side of the court," which is the language of the first sentence.

So far as we may look to the purpose of the section I cannot think there is any doubt. Congress can hardly be thought to have any predilection for plaintiffs' suits in equity rather than defendants', and we must leave a capricious exception in practice, if we do not include a case like this. I agree that the language of the section is not what a Mitford or a Langdell would have used; but the purpose seems to me perfectly plain, and we ought, I think, to try to effect it if we can.

Section 274a (as added by Act March 3, 1915 [Comp. St. 1916, § 1251a]), does not perhaps fit verbally, certainly not if I am wrong about section 274b, but it shows the purpose to avoid recourse to independent suits in equity with their attendant delays. Indeed, without section 274b I should have thought that a replication at law to avoid the release would fall under section 274a, as a "suit at law" which "should have been brought in equity," and that the plaintiff might have amended in the very action and proceeded. It can hardly be that section 274b takes away such a right.

The result here is extremely hard upon the plaintiff, because, so far as I can see, it will not do him any good after this judgment to avoid the release. His claim will be merged, which is all he can sue on. The defendant did not raise any such point, either in the District Court or here, and the only ground for our raising it nostra sponte that occurs to me is that it touches the District Court's jurisdiction over the subject-matter, which seems to me certainly untrue. The parties having tried out the issue, without objection, as they supposed they might under the state practice, the absence of any formal replication is not a defect which the defendant could have urged here for the first time—

Keator Lumber Co. v. Thompson, 144 U. S. 434, 12 Sup. Ct. 669, 36 L. Ed. 495 (replication by traverse), Comer & Co. v. Wade, 107 Ala. 300, 307, 19 South. 966, 54 Am. St. Rep. 93 (replication in confession and avoidance)—and in any event it did not raise it. Thus an affirmance will now deprive the plaintiff, even if I am wrong about section 274b, of his undoubted right, had the objection been raised at the trial, to ask for a stay of the action until he could file his bill in equity.

I dissent.